**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DEANNE LYNN DALY,

    Plaintiff

v.

MARTIN O'MALLEY,
Commissioner of Social
Security Administration,

    Defendant

Case No.: 3:23-cv-00310-CSD

**Order**

Re: ECF No. 14

Before the court is Plaintiff's Motion for Judgment, or in the Alternative to Remand, Under 42 U.S.C. Section 405(G). (ECF Nos. 14, 14-1.) The Commissioner filed a response to Plaintiff's motion. (ECF No. 16.) Plaintiff filed a reply. (ECF No. 17.)

For the reasons set forth below, Plaintiff's motion is denied.

**I. BACKGROUND**

In December of 2017, Plaintiff completed an application for disability insurance benefits (DIB) under Title II of the Social Security Act, alleging disability beginning on August 29, 2017. (Administrative Record (AR) 661-662.) The application was denied initially and on reconsideration. (AR 621-629.)

Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 634-35.) ALJ John Loughlin held a hearing on June 16, 2020. (AR 124-150 .) Plaintiff, who was represented by counsel, appeared and testified on her own behalf at the hearing. Testimony was also taken from a vocational expert (VE). On June 30, 2020, the ALJ issued a decision finding Plaintiff not

disabled. (AR 106-118.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Commissioner. (AR 1-4.)

Plaintiff then commenced an action for judicial review under 42 U.S.C. § 405(g), case 3:21-cv-00218-MMD-CLB. (AR 2233-36.) The parties stipulated to a voluntary remand. (AR 2238-2240.) Based on that order, the Appeals Council remanded the case back to the ALJ. The Appeals Council noted that in rejecting Plaintiff's symptom testimony, the ALJ cited her statements indicating she was capable of walking and/or running up to one mile a day, but the ALJ did not address the context of her testimony or her complaints of pain and requirements for rest with physical activity. In addition, the ALJ noted that in considering her activity level, the recognized symptoms of her severe impairment of fibromyalgia should be taken into account consistent with Social Security Ruling (SSR) 12-2p. The ALJ was instructed to cite specific reasons for the symptom allegation findings, and support them with citation to evidence in the record, indicating that further evaluation of the claimant's alleged symptoms was necessary.

The Appeals Council also instructed the ALJ to do the following: give further consideration to the medical source opinions; further evaluate the alleged symptoms and provide rationale evaluating those symptoms; give further consideration to her maximum residual functional capacity (RFC) during the entire period at issue and provide rationale with specific references to evidence of assessed limitations, including evaluation of medical source opinions and prior administrative medical findings, and if appropriate, request the medical source provide additional evidence or further clarification. Finally, the ALJ was instructed that if warranted, he should obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on her occupational basis. (AR 2183-87.)

The Appeals Council noted that Plaintiff had filed a subsequent claim for Title II disability benefits on April 8, 2021, which was to be consolidated into the new decision. (AR 2186.)

ALJ Loughlin held a second hearing on August 2, 2022. (AR 2120-2174.) On August 30, 2022, the ALJ issued a decision finding Plaintiff not disabled. (AR 2078-2098.) On October 4, 2022, Plaintiff submitted written exceptions to the Appeals Council regarding the unfavorable decision. (AR 2687-2722.) On April 28, 2023, the Appeals Council notified Plaintiff that it reviewed the submitted exceptions and found no reason to assume jurisdiction. (AR 2024-2027.)

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g), arguing: (1) the ALJ mischaracterized, cherry-picked or omitted material facts; (2) the ALJ did not properly consider and reject Plaintiff's subjective symptom statements; (3) the ALJ did not properly consider Plaintiff's fibromyalgia; (4) the ALJ did not factor all impairments into his RFC; (5) the ALJ was biased; (6) the ALJ did not consider all of the available medical opinions; and (7) the ALJ failed to seek guidance from a medical expert.

The Commissioner, on the other hand, argues: (1) the ALJ reasonably discounted Plaintiff's self-reports because of inconsistencies between her claims and other evidence in the record; (2) the ALJ reasonably found Plaintiff's fibromyalgia was not *per se* disabling; (3) the ALJ was not biased; (4) the ALJ reasonably assessed the persuasiveness of the medical opinions based on their supportability and consistency with the record; and (5) the record was adequately developed.

///

///

///

## II. STANDARDS

**A. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or her physical or mental impairments are so severe as to preclude the claimant from doing not only his or her previous work but also, any other work which exists in the national economy, considering his age, education and work experience. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. §404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.152(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant has an impairment that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R.

§ 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(a).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4)(v), § 416.920(a)(4)(v); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545 and § 416.945. In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitation(s), and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and  416.945(a)(3).

A claimant can return to previous work if he or she can perform the work as he or she actually performed it, *i.e.*, if he or she can perform the "actual functional demands and job duties of a particular past relevant job," or as generally performed, *i.e.*, "[t]he functional demands and

job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted). If the claimant can still do past relevant work, then he or she is not disabled. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131.

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a VE or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

If the Commissioner establishes at step five that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566(b), § 416.966(b). Conversely, if the Commissioner determines the claimant is unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g), § 416.920(g); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**B. Judicial Review & Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez*, 740 F.3d at 522

(citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.* (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

///

///

///

# III. DISCUSSION

## A. ALJ's Findings in this Case

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 29, 2017. (AR 2081.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: obesity; diabetes mellitus, type 2; thoracic and lumbar spine degenerative disc disease; right shoulder acromioclavicular joint arthrosis; bilateral thoracic outlet syndrome; fibromyalgia/myofascial pain syndrome/chronic pain; obstructive sleep apnea; chronic obstructive pulmonary disease (COPD)/asthma; brachial plexus disorder; essential hypertension; bilateral carpal tunnel syndrome; osteoarthritis of the bilateral hands; major depressive disorder; and generalized anxiety disorder. (AR 2081.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 2084)

At step four, the ALJ assessed Plaintiff as having the RFC to perform light work, except: she must be allowed to alternate between sitting, standing and/or walking every 30 minutes while remaining on task; she can frequently handle, finger, push, pull and/or reach overhead with both upper extremities; she can occasionally push, pull and/or operate foot controls with both lower extremities; she can frequently balance; she can occasionally stoop, kneel, crouch, crawl, and/or climb stairs/ramps; she can never climb ladders, ropes or scaffolds; she can occasionally be exposed to vibrations, unprotected heights and/or moving machinery parts and can have occasional exposure to dust, noxious odors or fumes, poor ventilation, extreme cold and/or heat; she can understand and remember simple instructions, make simple work-related decisions, and

carry out simple instructions; she cannot perform work which requires a specific production rate, such as assembly line work or hourly quota work; she can occasionally deal with changes in a routine work setting; and she can occasionally deal with coworkers and/or the public. (AR 2088.)

The ALJ then concluded Plaintiff was unable to perform any past relevant work. (AR 2096.)

At step five, the ALJ determined that considering Plaintiff's age, education, work experience and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (AR 2096-2097.) As a result, the ALJ found Plaintiff not disabled from August 29, 2017, through the date of the decision. (AR 2098.)

**B. Subjective Symptoms**

Plaintiff argues that the ALJ mischaracterized, by cherry-picking the record and ignoring and/or rejecting conflicting evidence, without providing clear and convincing reasons to do so, citing *Garrison v. Colvin*, 759 F.3d 995, 1014-1015 (9th Cir. 2014). The "clear and convincing reasons" standard discussed in *Garrison* relates to the ALJ discrediting the claimant's subjective symptom testimony. While Plaintiff does not make it clear, the court will analyze these arguments in that context as it appears Plaintiff is arguing the ALJ did not give clear and convincing reasons supported by substantial evidence in the record for discrediting Plaintiff's subjective symptom complaints.

**1. Standard**

Evaluating a claimant's subjective symptom testimony "becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective

statements may tell of greater limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001) (citing Social Security Ruling (SSR) 96-7P)).[1]

"Such testimony is inherently subjective and difficult to measure." *Coleman v. Saul,* 979 F.3d 751, 755-56 (9th Cir. 2020). This evaluation is often crucial to a finding of disability. *Id.* (citing *Fair v. Bowen,* 885 F.2d 597, 602 (9th Cir. 1989)).

There is a two-step test for evaluating a claimant's subjective symptom testimony:

First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison*, 759 F.3d at 1014-15 (9th Cir. 2014) (internal quotation marks and citations omitted, emphasis original); *see also Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. However, the ALJ concluded that her statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical and other evidence in the record.

---

[1] The Social Security Administration (SSA) previously referred to this as a credibility determination. SSR 96-7P. SSA subsequently eliminated use of the term "credibility." SSA has clarified that "subjective symptom evaluation is not an examination of an individual's character." Instead, the adjudicator considers all of the evidence in evaluating the intensity and persistence of a claimant's symptoms. SSR 16-3P.

**2. Plaintiff's Testimony**

Plaintiff testified that she has severe pain in her feet, ankles, and knees that shoots up from her ankles to her buttocks and back, and is "24/7" and never leaves. (AR 133-34.) She has severe chronic fatigue that requires her to take one or two naps a day, and she wakes up three to five times a night due to pain. (AR 135, 2133, 2146, 2151.) She sleeps in a recliner because it is too painful to sleep in her bed. (AR 140.) She takes medications that reduce her pain by roughly 20 to 25 percent. (AR 134, 2152.) She has good days and bad days, with the good days occurring roughly two days a week, and the bad days three days a week. (AR 2161-62.)

She suffers from symptoms of Irritable Bowel Syndrome (IBS), which results in severe pain and causes her to be in the bathroom for an hour. (AR 143.) She has had accidents where she soiled herself due to IBS. (AR 2145.)

In June 2020, she was not taking medication for her diabetes, but she did monitor her blood sugar once a day. (AR 144.)

She does a load of laundry per week. (AR 136.) She does not prepare or cook any meals, but goes to a grocery store where they grill her meat, and her mom makes her vegetable dishes. She uses the microwave and paper plates and cups so she does not have to do dishes. (AR 142, 2142.) In June 2020, she testified that she would go grocery shopping about twice a month, and she had her 12-year-old neighbor carry in her groceries. (AR 143.) In August 2022, she indicated that she spends two to three hours a week at the grocery store or bank, but her parents drive her. (AR 2147.)

She testified that she cannot lift twenty or even ten pounds, but she can lift up to two pounds without pain. (AR 139, 2159-60.) She can sit upright in an office chair for five to ten minutes before having severe back pain. (*Id*.) She later testified she could sit in a regular chair

11

for up to an hour. (AR 2140.)  She has difficulty standing for long because of bone spurs in her heel and tarsal tunnel in her ankle. (AR 139-40.) She estimates she can stand without moving around for about five minutes, and if she is walking around, she can stand for maybe 15 to 20 minutes before she has to sit. (AR 140.) She can walk around the length of half of a football field before having to rest. (AR 141.) She testified that she could not sit for six hours in a day. She has balance issues when walking and could not stand for even two hours in a day. (AR 2156-57.) She can occasionally reach above her head. (AR 2158.)

Generally, she can do an activity for ten minutes before needing to stop and rest for 30 to 40 minutes. (AR 137.)

Her doctors have recommended that she exercise. (AR 2148.) In June 2020, she testified that she was usually in the pool three days a week to do stretches, but because the pool was shut down during the COVID-19 pandemic, she was forced to walk halfway around her apartment complex (which is about half a football field in length), and then would need to be off of her feet for three hours. (AR 141.) In August 2022, she was going to the pool three days a week to do stretching exercises to help with pain management. (AR 2142, 2148.) She does not run or jog on land, but she does walk for exercise, although she can only walk five to ten minutes before needing to rest. (AR 2149.)

In June 2020, she testified that she was living alone, but she did live with her parents for almost a year in 2018 to 2019, and her parents took care of her. (AR 138.) In August 2022, her parents had moved in to help take care of her. (AR 2140.) Her brother also lived with her for three months in 2022, and he helped her during that time. (AR 2162.)

She goes out with a friend two or three times a month for two to three hours, where they go to stores and to lunch. When she gets home, she has to take a nap. (AR 2144-45.)

### 3. Gait, Orthotics, and Exercise

In finding that Plaintiff's bilateral plantar fasciitis, plantar calcaneal spurs, Haglund's deformity, bilateral tarsal tunnel syndrome, and neuropathy did not rise to the level of severe impairments, the ALJ commented that Plaintiff had intact balance and a normal or mildly antalgic gait without reliance on an assistive device. The ALJ further noted that Plaintiff reported that orthotic insoles help her feel better when walking and admitted she does a significant amount of walking for exercise. The ALJ concluded these findings did not support her testimony and statements that her feet will not allow her to tolerate standing and walking. (AR 2082.)

Plaintiff argues that the ALJ disregarded records noting an antalgic gait, that did not use the modifier "mild," or discussed poor balance and an inability to heel and toe walk due to balance issues.

The ALJ cited various records which commented that Plaintiff had a normal gait and balance, and that she ambulated independently without assistive devices. (AR 1944, 3147, 6878, 6917, Exhibit 50F/4[2].) Plaintiff, on the other hands, cites to several medical records which comment that she had an antalgic gait[3], although it was also noted she was walking without an assistive device. (AR 6910, 6917, 6923, 6929.) In reviewing the other arguments asserted by Plaintiff, the court came across several other instances in Plaintiff's medical records where she was noted as having a steady or normal gait, and ambulating well independently. (*See* AR 1548, 1553, 1559, 1561.) "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740

---

[2] The court will cite to the Exhibit number, letter and page number in instances where the AR page number is illegible.

[3] Antalgic means "marked by or being an unnatural position or movement assumed by someone to minimize or alleviate pain or discomfort[.]" *See* Antalgic Definition & Meaning | Merriam-Webster Medical, last visited June 24, 2024.

F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). Therefore, the court cannot find the ALJ erred in discrediting Plaintiff's subjective statements that her feet would not allow her to tolerate standing and walking.

Plaintiff further contends that she has custom made orthotics in her shoes that allow her to walk. In other words, she claims that if she did not have the orthotics, she would not be able to walk for even 30 minutes at a time. She argues this is different than saying orthotic insoles help her feet feel better when walking.

A review of the record cited by the ALJ reveals, however, that Plaintiff's medical provider specifically noted Plaintiff wore orthotics, and Plaintiff told the provider "they help her walk and feel better when walking." (AR 1978.) As such, the court finds the ALJ did not err in discrediting Plaintiff's subjective symptom statements regarding her ability to tolerate standing and walking on this basis.

Plaintiff next contends that nothing in the record indicates that she engages in a "significant" amount of exercise. Instead, she maintains the record demonstrates that bone spurs make it difficult to stand for more than 30 minutes. She also claims the ALJ merges instances where she and her doctors discuss efforts to walk a mile in 2017 and 2018, with one instance where she indicated she tried to run. She maintains there is nothing inconsistent with trying to walk or even run a mile in 2018, and the fact that she had pain that made it difficult to walk or stand for more than 30 minutes, or that she experienced exhaustion as a result. She also clarified at the 2022 hearing that she is no longer able to water jog, and while she used to walk outside, she fell a few times, and since moved to walking in the gym. In addition, while medical records note pool exercise, she says she clarified she drives to the pool to conserve energy, does stretches in the water, and no longer lap swims due to pain.

In September 2017, Bonnie Dundee, OT, recommended that Plaintiff spend 20 to 30 minutes a day moving in the pool, and that she walk a mile roundtrip to the mall, taking rests as needed. (AR 936.) Plaintiff reported in October 2017 that she was swimming in a heated pool. (AR 930.) At that time, it was noted she was walking a mile a day, and she was advised to continue to do so when her pain was manageable, and to keep up with the swimming. (AR 933.)

On June 14, 2018, physical therapist Corinne Cooley stated that Plaintiff was walking one mile with some pain symptoms, but she pushed herself to do it, but she had to sit in a recliner for 30 to 45 minutes to recover afterward. (AR 1851.) On July 23, 2018, Dr. Golden commented that Plaintiff tried to run one mile a day on the treadmill, and sometimes would swim in the pool. (AR 1557.)

In September 2021, a medical provider indicated that she reported trying to get up and walk on the treadmill at home for ten minutes every hour, but it was difficult given her history of bone spurs and episodes of dizziness. (AR 6557.)

In June 2020, Plaintiff testified she could probably walk roughly the length of half of a football field (50 yards) before having to rest. (AR 141.)

Plaintiff points to a February 16, 2022, record where Nurse Practitioner Teixeria noted she was unable to tolerate any significant exercise. However, it appears this is actually what Plaintiff reported to Nurse Practitioner Teixeira and was not the provider's own observation or assessment. (AR 6693.)

As of the August 2022 hearing, Plaintiff was walking on a treadmill for exercise. (AR 2149.) She testified she can walk for five to ten minutes before she has to rest, and after a short period of time her feet start to hurt. (AR 2149.) As of that time, she was also doing stretching exercises in the pool, but not swimming or water jogging. (AR 2148-49.)

Plaintiff is correct that this does not indicate she was doing a "significant" amount of exercise, at least as of August 2022. The court finds, however, the error is harmless since the ALJ gave other sufficient reasons for discrediting her subjective symptom statements regarding the ability to tolerate standing and walking. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citation omitted) ("So long as there remains substantial evidence supporting the ALJ's conclusion on … [subjective symptom testimony] and the error does not negate the validity of the ALJ's ultimate … conclusion, such error is harmless and does not warrant reversal.").

**4. Stable and Conservative Treatment Recommendations**

Next, the ALJ indicated that Plaintiff's treatment recommendations remained relatively stable and conservative, including non-opiate oral medications, topical pain relievers, ice, heat, TENS, and physical therapy. (85F/14-19; 91F/3.) In addition, the ALJ pointed out that her prescription for a mobility scooter was initiated by Plaintiff, not the physician, and the accompanying examination report did not note serious difficulty with balance, walking or lower extremity functions to support the need for a scooter. (AR 2091.)

Plaintiff argues the record is clear she requested the scooter due to pain, fatigue, shortness of breath, and fear of falls. She claims she has fallen due to issues with balance and neuropathy. She also contends that she consistently complained of an inability to walk for long periods, and testified to using a scooter in stores.

Plaintiff cites one record where she reported an instance of falling. She does not dispute, however, that overall, her treatment recommendations were "relatively stable and conservative." (*See* e.g. AR 10396097, 10403-06, 10538, discussing treatment modalities.) Furthermore, the ALJ was accurate in stating that Plaintiff was the one who requested the referral for the mobility

scooter. He was likewise accurate when he commented that the physician's accompanying

examination report did not note any difficulties with balance, walking, or lower extremity

functions. (AR 10384-86.) Accordingly, the court finds the ALJ did not err in discrediting

Plaintiff's subjective symptom statements in this regard.

**5. Irritable Bowel Syndrome**

The ALJ noted Plaintiff's testimony about symptoms of irritable bowel syndrome (IBS),

commenting that she frequently denied bowel problems and incontinence during examinations.

In addition, the ALJ stated that her weight gain over the relevant period was not consistent with

serious IBS symptoms. In summary, the ALJ found the record did not support Plaintiff's claims

about the frequency and intensity of her symptoms and limiting effects associated with IBS. (AR

2081.)

Plaintiff argues the records do support her complaints of IBS pain, diarrhea, and related

limitations.

There are minimal medical records concerning Plaintiff's IBS. She did see a provider at

Gastroenterology Consultants on June 19, 2019, for complaints of abdominal pain and diarrhea.

At that point she had a little bit of urgency, but never incontinence. (AR 3127.) The provider

recommended a colonoscopy, which she declined, and stool sample lab testing, which was

negative. (AR 3128, 3129.) She went to Digestive Health Associates over a year later, on August

19, 2020, for complaints of constipation and diarrhea, and intermittent abdominal pain with

constipation. (AR 7163.) The provider recommended a colonoscopy for further evaluation of

constipation and lower abdominal pain, but she again declined. She was advised to take Citrucel

and Miralax, to drink two liters of water a day and incorporate a squatty potty, and if there was

no improvement she should try Linzess or Trulance and get a CT of the abdomen and pelvis. (AR 7166.)

Plaintiff argues that not mentioning issues with IBS to doctors who do not treat IBS does not discount her IBS related symptoms. However, Plaintiff also points to records from doctors who do not treat IBS (such as Sweetwater Pain and Spine) where she endorsed abdominal pain, diarrhea, and nausea (*see* AR Exhibit 49F/2, 49F/7, 53F/4), but there was no comment from her provider about her IBS, no diagnosis and no recommended treatment for her symptoms. As the ALJ pointed out, on many other occasions, she did not endorse these symptoms.

The court agrees with the ALJ that the objective medical evidence does not support her claims regarding the frequency and intensity of her symptoms and the limiting effects she attributes to IBS. Therefore, the ALJ did not err in this regard.

**6. Diabetic Neuropathy**

In finding that Plaintiff's obesity and diabetes did not meet the requirements of a Listed Impairment, the ALJ indicated that Plaintiff denied diabetic neuropathy symptoms. In addition, Plaintiff testified she did not need medication for blood sugar management, and treatment records indicate she employed lifestyle changes to counter effects of obesity and diabetes without requiring insulin. (AR 2086.)

Plaintiff contends her medical records show her diabetes is no longer controlled by lifestyle changes, that she continued to gain weight and requires Metformin to control her diabetes. In addition, she asserts she now experiences diabetic neuropathy symptoms, including numbness and pain. She also testified that she has fallen due to issues with balance and neuropathy.

Plaintiff cites to a record from December 2021, indicating that she was taking Metformin to control her type two diabetes. (AR 10384-10387.) There was no discussion by this provider of diabetic neuropathy. The only record Plaintiff cites that mentions diabetic neuropathy is from Spine Nevada on February 7, 2022; however, it appears that it was *Plaintiff* that reported to the provider she was experiencing diabetic peripheral neuropathy. (AR 6914.) Finally, Plaintiff points to a record from July 2020, where she was seen at Renown and reported chest pain and that she had a fall three months prior. The provider indicated her exam was benign, and while she instead on imaging the provider commented that she though Plaintiff was "just generally feeling chronic pain secondary to her fibromyalgia." There was no mention of or diagnosis including diabetic or peripheral neuropathy. (AR Exhibit 503F/50-52.)

Therefore, there is substantial evidence to support the ALJ's finding concerning diabetic neuropathy and the conclusion that her obesity and diabetes did not meet the requirements of a Listed Impairment.

**7. Living Alone**

The ALJ concluded the severity of Plaintiff's mental impairments did not meet or equal a Listed Impairment. As part of this analysis, the ALJ determined Plaintiff did not satisfy the "paragraph C" criteria, noting that during the relevant period Plaintiff demonstrated the ability to live alone, even though she has at times lived with her parents, and has continued functioning reasonably well with only outpatient mental healthcare. (AR 2088.)

Plaintiff argues the record demonstrates that she moved in with her parents, moved out and tried to live independently because there were no doctors close to her parents' house, and then her parents moved in with her so she could be close to her doctors and they could take care of her and help her. She asserts this does not demonstrate an ability to live alone.

Plaintiff does not dispute, however, that she did live alone for certain time periods where she was able to care for her own needs, and the ALJ acknowledged that Plaintiff did, at times live with her parents. Moreover, Plaintiff does not take issue with the other reasons the ALJ gave for finding Plaintiff did not meet the "paragraph C" criteria. (AR 2088.) Therefore, the court finds the ALJ did not err in this regard.

**8. Back Pain**

While Plaintiff testified that back pain seriously limits her tolerance for sitting, the ALJ noted that examinations revealed good range of motion in the spine and no evidence of difficulty or discomfort maintaining a seated posture. (AR 2091.)

Plaintiff claims this is inaccurate,  as she had limited extension, pain with bilateral facet loading, marked tenderness at various spine levels, and decreased hip range of motion. She maintains that good range of motion does not equal an absence of pain.

The ALJ and Plaintiff cite records that support each of their positions. Again, if the evidence can reasonably support affirming or reversing the ALJ, the court may not substitute its judgment for that of the ALJ. Therefore, the ALJ did not err in discrediting Plaintiff's statements that her back pain seriously limits her tolerance for sitting .

**9. Daily Activities**

The ALJ concluded Plaintiff's self-reported activity level demonstrated she did not have debilitating fatigue symptoms. Contrary to Plaintiff's testimony that her fatigue had worsened since she stopped working, the ALJ noted that Plaintiff continued to go out for shopping, appointments, eating, and socializing. (AR 2083.) The ALJ likewise found Plaintiff's claims of social isolation were incongruous with evidence she socializes with a friend, dines out, and goes shopping at the store, and lived with her parents at times. (AR 2093.)

Plaintiff argues that during the hearing, she testified she makes a point to meet one friend once a week to make sure she is not isolating because she has been warned by her doctors that people with fibromyalgia who isolate have a higher incidence of suicide. She asserts that she also testified she never takes on more than one activity a day, and naps before and after the activity.

Plaintiff asserts that she explained that while she lived alone, she did not cook, she bought prepared food from the grocery store grill, her mother cooked vegetables for her, she only used disposable plates, cutlery, and cups so she did not have to wash dishes, and she paid her 12-year-old neighbor to carry in her groceries when she made her bi-monthly grocery trip. When she lives with her parents, her mother does all the cooking, shopping, and drives her around. Plaintiff also argues the ALJ did not discuss the natural waxing and waning of Plaintiff's various chronic conditions and related symptoms, particularly fibromyalgia and myofascial pain syndrome.

A claimant's daily activities are just one factor the ALJ may consider in evaluating allegedly disabling subjective symptoms. 20 C.F.R. § 404.1529(c). An ALJ may discount a claimant's subject symptoms when her activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. This is precisely what the ALJ found: that Plaintiff's claims that her conditions were "totally debilitating" were contradicted by her reported activities. She did socialize with a friend where they would go out for lunch and to a store. She also acknowledged that she did some grocery shopping and some household chores. While there were limitations to these activities, the fact that she engages in them does contradict her claim that her symptoms are completely debilitating. Therefore, the ALJ did not err in discounting her subjective symptom statements on this basis.

///

///

21

**C. Fibromyalgia**

Plaintiff argues the ALJ did not properly consider the recognized symptoms of her severe impairment of fibromyalgia because the ALJ spent less than one hundred words considering whether it equals a medical listing. Plaintiff asserts this analysis contains only conclusory findings, with no explanation or rationale, and a citation to cherry-picked evidence from the record. Plaintiff contends the ALJ did not consider or discuss the co-morbid effects of chronic pain and fatigue from fibromyalgia, depression and anxiety on her daily functioning and ability to concentrate. She further maintains the ALJ failed to appreciate the significance of symptoms such as brain fog/freeze and ignored these issues as well as memory issues in the record. Finally, Plaintiff asserts the ALJ failed to properly discuss chronic pain and fatigue.

The Commissioner asserts that to show an error in the ALJ's step three finding, the claimant must identify "which listing she believes she meets or equals," and then set forth "evidence which would support the diagnosis and findings of a listed impairment." (ECF No. 16 at 6, citing *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). The Commissioner asserts Plaintiff does not confront any of the evidence or show how it would support a finding that Plaintiff's fibromyalgia satisfied the requirements of any listing.

To reiterate, at step three, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment(s) meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a).

Here, at step three, the ALJ addressed whether Plaintiff's fibromyalgia meets or equals a Listed Impairment. The ALJ said he considered Plaintiff's fibromyalgia as required in his decision, but even when considering it in conjunction with Plaintiff's other impairments, found there was no evidence of symptoms that fulfilled the requirements of any medical listing in section 14.00 or any other medical listing. (AR 2086.) The Commissioner is correct that Plaintiff does not identify which Listed Impairment she believes that she meets. Nor does she point to specific evidence and explain how it demonstrates she meets a Listed Impairment. Therefore, the ALJ did not err in determining that Plaintiff's fibromyalgia did not meet or equal a Listed Impairment.

**D. Non-Severe Impairments and RFC**

Plaintiff contends that the ALJ did not identify all impairments at step two, including: obesity hypoventilation syndrome/morbid obesity with alveolar hypoventilation  and restless leg syndrome.

The Commissioner does not address this argument. In any event, for her restless leg syndrome, the single medical record Plaintiff cites that discusses this condition notes that it disrupts her sleep, but it is not painful (AR 554). The provider assessed the restless leg syndrome was possibly due to her nortriptyline medication, and the plan was to consider an alternative if the symptom worsens or continued to be a problem. (AR 558.) Plaintiff does not point to any other record indicating that the restless leg syndrome continued to be an issue such that it may qualify as a severe impairment. *See Carmickle v. Comm'r Soc. Sec. Admin.,* 533 F.3d 1155, 1165 (9th Cir. 2008) (citing *Burch v. Barnhart,* 400 F.3d 676, 682 (9th Cir. 2005) (holding that a medical impairment is deemed "'severe' when alone or in combination with other medically determinable physical or mental impairment(s), it significantly limits an individual's physical or

1   mental ability to do basic work activities" and noting the record did not establish any work-

2   related limitations as a result of the impairment). Therefore, the ALJ did not err in this regard.

3        With respect to her hypoventilation syndrome/morbid obesity with alveolar

4   hypoventilation, Plaintiff again only cites a single record mentioning these conditions. (AR 904.)

5   That record, however, contains no assessment or plan or further discussion regarding these

6   conditions. (AR 904-911.) Nor does Plaintiff point to any other record demonstrating that these

7   conditions may qualify as a severe impairment. Therefore, the ALJ did not err in failing to

8   consider this as a severe impairment.

9         Plaintiff further argues the ALJ did not explain how her non-severe impairments, such as

10   bilateral plantar fasciitis, plantar spurs, Haglund's deformity, bilateral tarsal tunnel syndrome,

11   neuropathy of the feet, balance issues, and bilateral knee pain, affected the RFC.

12        The Commissioner contends the ALJ considered all of Plaintiff's alleged limitations,

13   including balance issues, neuropathy in the feet, and her fears of falling. The Commissioner

14   asserts the ALJ reasonably found these allegations were not fully reliable.

15        In assessing Plaintiff's RFC, the ALJ stated that he viewed the evidence in the light most

16   favorable to Plaintiff by further reducing the light exertional RFC to accommodate the symptoms

17   and limiting effects supported by the record. In particular, to accommodate transient pain

18   symptoms and her subjectively reported walking and balance issues, the ALJ limited Plaintiff to

19   frequent pushing/pulling and/or reaching overhead with both upper extremities, occasional

20   pushing, pulling and/or operating foot controls with both lower extremities, frequent balancing,

21   occasional stooping, kneeling, crouching and/or crawling, occasional climbing of stairs and/or

22   ramps and no climbing of ladders, ropes and/or scaffolds. These findings also addressed the

23   limiting effects of her thoracic and lumbar degenerative disc disease. (AR 2091.) The court finds

1 the ALJ adequately took into account these non-severe impairments and assessed Plaintiff's

2 subjective symptoms statements with respect to these conditions in determining her RFC.

3 **E. Was the ALJ Biased?**

4       Plaintiff asserts that of the 29 cases of ALJ Loughlin before federal courts, 18 were

5 remanded, and of those, 15 were based on alleged disabilities due to one or a combination of the

6 following impairments: fibromyalgia, obesity, pain, fatigue, and other subjective symptoms,

7 complaints or evidence. (ECF No. 14-1 at 24.) Accordingly, Plaintiff surmises that ALJ Loughlin

8 is biased against, or lacks an understanding, of claims involving fibromyalgia, obesity and/or

9 subjective symptoms such as pain and fatigue.

10       To succeed on a claim "that the ALJ did not impartially assess the evidence," the

11 claimant "must show that the ALJ's behavior, in the context of the whole case, was so extreme

12 as to display clear inability to render fair judgment." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214-

13 15 (9th Cir. 2005) (quotation marks and citation omitted). We "begin with a presumption that the

14 ALJ was unbiased[,]" and the claimant "can rebut this presumption by showing a conflict of

15 interest or some other specific reason for disqualification." *Id*. at 1215 (quotation marks and

16 citation omitted).

17       Plaintiff's argument that the ALJ was biased because he has had decisions remanded for a

18 variety of reasons is unavailing. These broad-based accusations do not demonstrate behavior "so

19 extreme" that the ALJ was clearly unable to render a fair judgment. Plaintiff has failed to

20 overcome the presumption the ALJ was unbiased in his decision making. *See Cope v. Colvin*,

21 No. 2:15-cv-01744 JRC, 2016 WL 6439940, at *8-10 (W.D. Wash. Nov. 1, 2016) (rejecting

22 claimant's argument that ALJ was inherently biased against claimants like him by submitting

23 other decisions by the ALJ).

**F. Evaluation of Medical Opinions**

Next, Plaintiff argues the ALJ did not properly consider the medical opinion of Dr. Sabsovich, and did not discuss the opinion of Dr. Javakar at all.

New regulations were adopted for evaluating medical evidence in social security cases that apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. pts. 404, 416. Prior to the adoption of these regulations, there was a hierarchy applied to evaluate medical opinions with treating physicians given substantial weight, examining physicians were given greater weight than non-examining physicians, and physicians who only review the record were given less weight than treating or examining physicians. *See Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022).

Under the new regulations, "there is not an inherent persuasiveness to evidence from [government consultants] over a [a claimant's] own medical source(s), and vice versa." *Id.* at 791 (quotation marks and citation omitted). "'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency'." *Id.* (citing 20 C.F.R. § 404.1520c(a)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant … objective medical evidence.'" *Id.* at 791-92 (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent … with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (citing 20 C.F.R. § 404.1520c(c)(2)).

Plaintiff's claims were filed after March 27, 2017; therefore, the new regulations apply.

The ALJ discussed Dr. Sabsovich's opinion that Plaintiff could return to work with limited use of the right hand, limited forceful gripping and squeezing with the right hand, limited overhead work with the right arm, and no pushing, pulling and lifting greater than three pounds

with the right arm. The ALJ found the opinion unpersuasive because of the following: it was rendered for worker's compensation purposes applying different program regulations and is worded in undefined terminology such as "limited"; the restricting to lifting three pounds with the right arm was inconsistent with the measured strength during examinations and personal activities like driving; and the worker's compensation and remote age of the clinical data indicated the opinion was not a reliable representation of her overall functioning when compared to other examination findings across the relevant period. (AR 2095.)

The ALJ pointed out the inconsistency of the opinion with examination findings and personal activities, and the remote age of the clinical data when compared to the longitudinal record. Regardless of whether it was proper to point out that the opinion was issued in the worker's compensation context, the ALJ set forth other sufficient reasons for finding Dr. Sabsovich's opinions were unpersuasive, and thus, did not err.

Plaintiff also contends the ALJ failed to discuss Dr. Jayakar's opinion. Dr. Jayakar examined Plaintiff on December 13, 2017, concerning her right shoulder industrial injury. His records contain diagnoses concerning her shoulder, and note that a cortisone injection was administered. (AR 896-99.) The records do not, however, contain any medical opinions. "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in [various] abilities[.]" 20 C.F.R. § 404.1513(a)(2). Therefore, the ALJ did not err in this regard.

**G. Development of the Record**

Finally, while Plaintiff maintains there is enough evidence in the record to find her disabled, she argues that if there is not, it is because the ALJ failed to fully develop the record,

by not having her examined, not consulting a medical expert regarding her medical conditions, or calling her treating doctors to testify. She maintains that the ALJ erred by acting as his own medical expert.

The Commissioner contends that only ambiguous evidence or an inadequate record triggers the ALJ's duty to develop the record, neither of which was the case here.

Claimants carry the burden of proving they are disabled. 20 C.F.R. § 404.1512(a). That being said, an ALJ has a responsibility to develop a "complete medical history" and "make every reasonable effort to help [the plaintiff] get medical reports." 20 C.F.R. § 404.1512(d). The duty to develop the record further is only triggered, however, when there is ambiguous evidence, or the record does not allow for proper evaluation of evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

Plaintiff does not identify what evidence is ambiguous or how the record did not allow for the proper evaluation of evidence in order to trigger further development of the record. Therefore, the court does not find the ALJ erred in failing to further develop the record.

### IV. CONCLUSION

Plaintiff's motion for reversal and/or remand (ECF No. 14) is **DENIED.** The Clerk shall enter JUDGMENT in favor of the Commissioner.

**IT IS HEREBY ORDERED.**

Dated: June 25, 2024

Craig S. Denney
United States Magistrate Judge